And we'll move to our second case this morning, Christian Arnold v. Kilolo Kijakazi. And I believe both counsel for this case are online. Alright, I see Mr. Jones and Ms. Milano. Can you hear me? I can hear you. Can you hear me okay, Your Honor? Yes. Alright, Mr. Jones, you may proceed. Thank you, Your Honor. Good morning. May it please the Court, Daniel Jones. I'm appearing on behalf of the true party of interest in this case, which is the law office of Bender and Bender. In this case, we'd like to thank the Court for hearing oral argument on this case. It's extremely important, not just to the Social Security Bar, obviously, for being able to request appropriate attorney fees, but also we think to claimants to be able to get effective and efficient representation and that the fees are protected so that they're reasonable in these types of cases. As the Court below found counsel's fee was too high, awarding only $16,920 out of the requested fee, reducing it by 58%. We believe that the Court started with the wrong position in this case. Although the district judge mentions this case didn't present any particularly difficult challenges or extraordinary circumstances on page 91 of the appendix, she then goes on to note that other cases in the context of Second Amendment have awarded effective hourly rates of $300 to $600 and then sets the hourly rate here at $600. So it's apparent that the district court is actually starting with the Lodestar amount. Those cases are not even applicable in any way to the facts here because those cases award fees under a Lodestar amount and they're awarded under fee-shifting statutes. Here that's not the case. This is a contingency case and it's not fee-shifting. Mr. Jones, if we agree with you, Mr. Jones, on this distinguishment with regard to the fee-shifting point, you're asking us to adopt the Second Circuit's approach in fields. There's also alternative approaches from the Sixth and the Ninth. Specifically, the Sixth talks about contingency fee being a rebuttable presumption. That somewhat resembles the Fifth Circuit standard but not identical. Are you asking us, if we address this area, to adopt the Second Circuit's position, the Sixth Circuit's position, or a different position? Your Honor, I think the Second Circuit's position is the one that best encapsulates what has happened with the law since Gisbert. So you would have us leave behind the rebuttable presumption of the contingency fee? Well, I think there is a presumption of starting with the contingency fee and I think that the Second Circuit's decision started with that as well. But the Sixth Circuit has taken the position that the court should start with a floor and can multiply a particular hourly rate to come up with something reasonable. I don't believe that that's appropriate post-Gisbert. I think that the Second Circuit's four-factor analysis better encapsulates a proper determination of windfall. And I think it's a little bit confusing. I agree with some of the frustration that Justice Scalia expressed in the dissent in Gisbert of how the courts are supposed to apply this sort of hybrid analysis of beginning with the contingency fee but also, in some cases, looking at hourly rates. And I think that the best way to apply this is what the Second Circuit did in Fields in making an initial determination, is there a windfall? And if there is a windfall, then considering hourly rates just as one factor. But here, the court starts clearly with the load-starter map. And even if we get into the factors, the court made clear that where it did consider the Fields factors, none of them weighed against the wording of the full fee except for this one about whether the case was risky or not. And the court did not explain why it found this case was not risky. It didn't tie a reduction of 58% of the fee to any particular finding. And I think the court is just wrong on that point. I think it's a false premise to say the case. Mr. Jones, if I could interrupt because time is short. Sure. Before we get too deep into the district judge's rationale here, and I read it more holistically than you do, she did touch on all the factors that were mentioned in Gisbert as being potentially relevant. My question is really antecedent to that, and it is about the nature of the contract in this case, the retention agreement, and whether it's really a true contingency agreement at all. It obviously is no fee unless we win kind of contingency, and that's necessary in this context because of the statutory structure for payment of fees. It comes out of the recovery of past due benefits if there is such a recovery. But it doesn't, as I read the agreement, and perhaps I'm misreading it, but it says the law firm may apply for fees under 406A and 406B, and the combined amount of these fees will not exceed 25% of any back due benefits. That's not a promise on the part of your client to pay a 25% contingency. It's an agreement that acknowledges your firm's entitlement to apply for fees under the statute as long as they don't exceed 25%. So there's no agreement to pay 25% of all past due benefits here, and so are we really starting from the same starting point as the Gisbert case and the Gisbert line of cases given the language of this retention agreement? Right, Your Honor. Well, all agreements contain similar language in my experience, and that's because the district court has to approve any fees. So there can never be a case where the parties stipulate to fees under 406B. It's not like equal access to justice. I'm not suggesting a stipulation. I'm focusing on the language of Gisbert itself, and the agreement in question there was an agreement that each client would pay counsel 25% of all past due benefits. That's just a restatement of how the Supreme Court described the agreement in question in that case. It was a true contingency agreement, and most contingency agreements in other contexts are stated in those terms, but your agreement simply restates the statutory language, which permits counsel to apply for fees and the court to award fees in a reasonable amount not to exceed 25%. So why should we be giving primacy to a 25% award as you're requesting us to because your agreement doesn't even say that? Well, the agreement says that we may petition the court for up to 25% of the fees, and I don't think that this is an issue that was raised in the district court or that's even before the court. We have a brief to this issue, and the district court didn't decide it. Well, we do have to apply the contract language because the whole point here is that the contract is entitled to significant weight in this context under the statute. That's the takeaway from Gisbrick, that we shouldn't ignore the contract and apply Lodestar, as we do in fee-shifting statutes. We should pay attention to what the contract says, and if the contract privileges a 25% award, that's also deserving of weight subject to a lot of other factors. Right. And there's a disagreement among the circuits about how to weigh all of those other factors and when those other factors should displace the 25% agreement, but there wasn't a 25% agreement in this case, is my point. There was an agreement that the claimant would pay up to 25% upon approval by the court. But that's not an agreement to pay 25%. It's just you've restated the statutory language in this agreement. You've said we're going to apply for fees under 406A and 406B, and the combined amount of these fees will not exceed 25%. And when your client signed that, there was no agreement to pay a presumptive 25%. It was an understanding that you would apply for fees, and the court would set fees not to exceed 25%. Right. So why are we even in Gisbrick at all? I don't think that that's inconsistent with Gisbrick or this court's holding in McGuire about fee agreements on a contingency basis. I don't see the conflicts there. Okay. Anything else? I did want to save some time for rebuttal, but I had some other points to make. If the court has questions, I can answer now, or... I'll give you some extra time. Thank you. We obviously weren't anticipating this line of questioning, so I'll give you some extra time at the back end. Okay. Thank you. Ms. Milano? Good morning, Your Honors. Good morning, Council. May it please the court, my name is Jessica Milano. I'm appearing on behalf of the Acting Commissioner of Social Security. This case involves a fee petition under 406B, and Congress has set forth pretty stringent requirements, given that these are coming out of a claimant's past due benefits. In this case, the district court identified the accurate legal standards and reasonably applied the factors in her consideration of the fee request. For that reason, the court should defer to the district court's decision. Her findings were not clearly erroneous, and a reasonable person could definitely agree with them under the facts here. Ms. Milano, do you want to address this idea that the district judge was analogizing to Second Amendment cases and was referencing fee-shifting statutes, which might differ in operation than Section 406? Yes. I believe it is relevant because there's a couple reasons I think that case was relevant, although it was a fee-shifting statute. The court was looking for a case that was within the same regional area, so the same market, and also involved similar risk and involved counsel of similar experience. So I believe at the end of the day, it was not improper for the court to look there, and the court also considered Social Security cases within the same region as well. So I think it was one of many considerations, but I think it was a litmus for finding what is a rate that would suffice to attract counsel of the same experience for the same type of risk. I have to think that the number of Social Security cases greatly outdistanced the number of Second Amendment cases. That is true. I would agree with that. So putting to the side the contingency fee question, whether there was a contingency fee arrangement here or not, the point of the contingency fee argument, I suppose, is all of those times when the plaintiff's counsel might take the case but be unsuccessful, those have to be offset by successful cases, and that there's a certain built-in risk that a plaintiff's counsel has taken by operating in this area of the law. If that's what the district judge was going for, query whether we need further elaboration. I mean, I see the 300 to 600 range, and we all as lawyers kind of have a feel for an hourly range on many cases, but that can collapse. That can dissipate in certain areas, in plaintiff's areas. Was she just using the 300 to 600 and then analogizing to people in that regional area, or what's her reasoning here? Your Honor, I don't think she was relying solely upon that. At the outset of her decision, she explains she agrees that she shouldn't start with the lodestar, and then she methodically goes through each of the factors. Many of the factors weighed in counsel's favor. The court was very appreciative of his experience and efficiency. At the end of the day, the problem was that it was just a very small amount of time, and it became a very large amount of benefits that were going to be paid out. So it just tipped the scale. The district court's in a hard position in that, again, some of those factors did weigh in favor, and ultimately, it fell the other way. As far as the risk analysis, that's generally a case-by-case consideration. So while there is inherent risk, courts will consider whether this was a more risky case than another case. But again, here, I don't think the district court relied heavily on risk. I think it relied heavily on the fact that it was a very moderate-sized record, and there was no reply briefing required and no oral argument, so it didn't require as much time input. Ms. Malano, I think perhaps if the district court had articulated the way you're articulating now, that might have gone a long way, but the district court seemed to, when looking for kind of extraordinary factors, what that suggested to me was the district court was starting at the baseline of the hourly rate, that is, the lodestar rate, and then trying to see, okay, well, what makes this case particularly difficult, so that I could justify awarding the fee pursuant to the contingency agreement, assuming that an enforceable one exists. That, to me, seems the opposite of what the Supreme Court required in Graysbrook, right? I mean, if we are to give primacy to the contingency agreement, it seems to me that whether we call it, you know, presumption, whether we call it deference, whatever we might call it, that that should be the starting point, and then the district court should perhaps augment the analysis to see whether or not that starting point is a reasonable one, as opposed to starting at a lower point and trying to justify going higher. That seems to be two distinct approaches. Sure, Your Honor. I think that if there's no set methodology, and that's the problem, right? It's because Brecht doesn't explain how a court should go about that. You know, should the court be reducing? Should the court be? And I think multiple courts have approved multiple ways of calculating this. Here, I think that the district court judge was within the realm of her discretion. I understand what you're mentioning about the extraordinary circumstances, and again, I think that was one of the many factors. And I think, you know, she was looking at the case as a whole and trying to met that out. And the other problem is inherent. When you have a case where not as much time was expended because there was a voluntary remand or, you know, the briefing just didn't require as much time, it's hard to not come to that and say, wow, this was a lot of fees based upon the time spent. So it's unfortunately… Ms. Milano, though, if I could push back a little bit. Sure. Couldn't it also be an indication that the law firm has a particular expertise in the area, so doesn't have to do all the basic research that a general practitioner might have to do, and because the law firm is so active in this area that the reputation of the law firm is well known to the commissioner, and so that might factor into all those decisions. And so it seems like… 100%. …you know, it seems like to some extent you might be punishing the law firm for its expertise and efficiency by saying, look, you know, they were too fast and too good. So they don't deserve anything more than the lodestar amount. Right. I don't… I think the district court, I mean, the district court did acknowledge and say appreciated the efficiency and expertise. So I agree that that is a factor that weighs in counsel's favor here, and the court came down ultimately and found the tipping point was elsewhere. Your Honors, the commissioner believes that the district court was within her discretion and that the court should defer, given the district court's consideration, experience, consideration of the fact-specific matters of the case, given that these are decided on a case-by-case basis. Unless the court has any further questions, I'll rest on our briefing. Ms. Solano, what's your reading of this language in the contingency agreement, the retention agreement? Is it… Your Honor, I… …a true contingency agreement, other than in the sense that the fees are going to come out of the recovery, which is the first criteria for a contingency agreement. It's not an hourly-based fee agreement. It's a contingency agreement in that the fees will come out of the recovery up to 25%. I do think… I do… I do read it as a contingency agreement. The first sentence of the first paragraph, if the appeal is successful and I'm awarded positive benefits by federal district court or district court, the law firm is to receive up to 25%. So, I do read it that way, and to the extent that it… That's actually not what it says, and I'm not questioning that it's a contingency agreement in the sense of recovery coming out of past due benefits awarded. I'm asking whether it's a promise to pay 25%, presumptively, subject to the court's reduction of that amount pursuant to the statute. Your Honor, I read it as an agreement to pay what is approved, what is approved by the agency. And 406A fees are required to be approved by the agency, and 406B fees are required to be approved by the district court. So, my reading of this and similar contracts is that I'm agreeing that if the court approves this, I will pay it. Meaning that 25% is the presumptive recovery and were to privilege that amount under Gisbrecht and the cases subject to reduction? Right. Or that it's just a reasonable fee up to 25%, whatever the court approves? I think… Right, right. And I think that… Those are two different things. Those are two very different things. You're right. No, you're right. And I think… I mean, this leaves… The wording of this contract certainly leaves discretion to the firm to not request the full 25%. I don't think there's a presumption that, based upon the wording of this contract, that the firm would always request 25%. So, I see where you're… Right. But in the real world, where everybody lives, under this contract, the request is always going to be for the 25% if there's an award of past due benefits made. And the question is whether that gets some presumptive weight under the language of the contract and the case law. Yes or no? Or does the judge just assess a reasonable fee within the 25% limit because that's what the client agreed to pay? Only some number up to and including the 25% limit, not 25% presumptively subject to reduction. Your Honor, as counsel mentioned, this wasn't an issue briefed, and if the court is interested in this issue, we'd certainly be happy to brief it. I understand what you're seeing. That's fine. We'll let you know. Thank you. Okay. Mr. Jones, you can have an additional three minutes in rebuttal because you didn't get to make all the points that you wanted to make, and this is an important case for your firm and for the Social Security Bar. Thank you, Your Honor. Just to touch once more on what you were just discussing with opposing counsel, I'd like to point out that in the real world, we actually don't request 25% on every case. There are cases where we self-reduce our fees because we do believe it's a windfall and it'd be unfair to the claimant, and I think those cases are important to take note of. And I think that those types of cases we're actually taking note of in the consolidated cases in McGuire that was before this court, two of the cases that were part of that case were sent back because of a concern there was a windfall. And those were because in one of the cases, the attorney had only spent 3.24 hours and the other one 5.6 hours. And these are the types of cases that I think are actually a windfall, and in those cases, we never request the full 25%. Those are often cases that are remanded without any briefing done at all, so it's becoming actually more frequent that the commissioner will, either before the answer is filed or right after the answer is filed, will review the case and decide this is not a case we're going to defend, and they'll agree to remand the case without any briefing. And in those cases, I do think it would be appropriate to find a windfall if an attorney was to request for the full 25%. And I think it goes to a phrase that's used in fields in some of the other cases as well, of whether the attorneys enjoy an unearned advantage. And certainly that's the case when a case is sent back without any briefing by the attorney, or in the McGuire case, the cases were sent back because there was a change in the law. At that time, Congress had passed the change in the law that mandated sending those cases back, so the risk factor became much less than it was. Whereas this case, we appealed the case at a time where this court had not issued any comprehensive decisions on how to interpret the commissioner's new regulations for evaluating medical opinions. And I think the risk factor has to be assessed at the time the appeal is undertaken. Justice Scalia says even in his dissent, we're not going to make ex post facto evaluations of the riskiness of the case. Even to this date, this court hasn't really done a detailed analysis of how medical opinions are evaluated under these new regulations. And certainly at the time this case was appealed. And to relate this case to the fields case, the court here didn't find any of the fields factors warranted reducing the fee other than risk. And fields was adjudicated under the treating physician rule with decades of case law at hand to interpret versus this case, which was much more risky under the new regulations. So I take that to be a suggestion that we'd be creating a circuit split with fields if we come out differently here or apply a different methodology. I don't think that there would be as if you're if you were to apply a different method than fields. Well, you're encouraging us to because our circuit hasn't weighed in on this fees issue since before Gisbert. And so you're encouraging us to follow the approach of the fields case, which is the Second Circuit instead of the Sixth and Fifth Circuits approach. Well, I don't think that I don't even think that fields is inconsistent with the approach in the Fifth Circuit and Jeter or the Sixth Circuit. And lastly, I believe is the end of the case, because all of the cases say that when when undertaking a windfall analysis that the court should consider multiple factors here, the court found the risk factor controlling over all other factors. All right. Anything else? If there's no further questions, I would ask this court to that it should reverse the case as was done in fields and in Crawford, just because the Supreme Court said that these cases should not result in satellite litigation that goes on and on forever. But at the very least, the case should be remanded with detailed instructions to the district court on applying the correct factors and explaining the decision. All right. Thank you very much. Thanks to both counsel. The case is taken under advisement.